### WILLIAMSON et v
### OHIO BROADCASTING CORP

Ohio Appeals, 7th Dist, Mahoning Co

Decided Nov 3, 1933

Henderson, Mason & Waller, Youngstown, for plaintiffs in error.

Manchester, Ford, Bennett & Powers, Youngstown, and Barnum, Hammond, Stephens & Hoyt, Youngstown, for defendant in error.

## OPINION

### By POLLOCK, J.

It appears that on the 29th day of January, 1931, one Clayton C. Townes had purchased from the two Williamsons, the defendants, 17½ shares of the stock of WKBN Broadcasting Company, leaving the Williamsons with 87½ shares of stock. At that time the plaintiff and the defendants entered into a trust agreement, putting their stock in the hands of trustees for voting purposes, and they also in that agreement entered into a contract providing what each should do in case one should want to sell their stock or purchase the others' stock. It is only with the latter part of the contract that we are now concerned. This agreement, so far as that question is concerned, reads as follows:

"Said trust agreement to further contain in addition to said customary and ordinary provisions of similar trust agreements, the provision that, should either of the parties hereto desire to sell or relinquish his interest in said corporation, he or they shall first made a bona fide offer to the other party to either buy the interst of the other party or to sell his interest to the other party for a definitely stipulated amount per share, said offer to be accompanied with a certified check for ten per cent of the amount so offered. Any such offer must be in writing and sent by registered mail or delivered personally to the other party. Upon the receipt of any such offer, the receiving party shall within ten days from the receipt of the same, elect either to buy the interest of said offering party at the figure named, or shall sell his interest to

such offering party for the same amount per share. In the event the receiving party fails to so elect, it shall be understood and agreed hereby that the receiving party shall sell his interest to the offering party for the consideration named therein; in such event it is hereby covenanted and agreed between the parties hereto, that this contract shall serve as an enforceable contract for the sale and purchase of said radio broadcasting station for the consideration named in such offer."

In addition to these 17½ shares which Mr. Townes acquired from the plaintiffs in error, it had acquired 70 shares from Mr. Lewis, which gave the defendant in error 87½ shares, so that the Williamsons and Townes had each 87½ shares, except one share of Williamsons that was in the name of Arthur P. Jones, so that he could be a director. After entering into this contract and the purchase of 70 shares, Townes sold his shares and transferred them to the Ohio Broadcasting Corporation; which seems to have been located in Cleveland, and also transferred his inteerst in this trust agreement and the sale contract to the Ohio Broadcasting Corporation. On the 20th of October, that year, and prior to that time, there had grown up some dissention between the persons operating the Ohio Broadcasting Corporation and the Williamsons about the management or what should be done with the Broadcasting Company, and on the 20th of October the Ohio Broadcasting Corporation met and referred in a resolution to the differences and authorized Mr. Townes to make an offer under the trust agreement to purchase at $200 a share the 87½ shares which the Williamsons owned, with one share of Jones. With the offer Townes forwarded a draft for ten per cent of this offer. Townes did not do anything with the offer of the Ohio Broadcasting Corporation to purchase the stock of plaintiffs in error until the 26th, when the proposition to purchase under the resolution was forwarded by Townes to the Williamsons at Youngstown. In the meantime, on the 22nd of October there was a call for the directors of the Broadcasting Company of Youngstown to meet in Youngstown. We should further say that after the sale of this property by Townes to the Ohio Broadcasting Corporation, he retained one share and Bender of that company was given one share in order to become director. The directors of the broadcasting company were the two Williamsons, Jones, of this city, and Townes

and Bender. As far as Bender is concerned, he does not appear to have been at the meeting of October 22nd. When the question of what should be done with the broadcasting company was under discussion, Mr. Townes, possibly, offered a resolution. He proposed that some merger proposition with the Columbus Broadcasting Company should be accepted. That was not accepted. The Williamsons were in favor of some proceedings before the Broadcasting Commission in Washington, in securing probably some more territory that was then held by the Columbus company. The Broadcasting Company was without funds, and the proposition was to raise funds to carry on this contention or claim before the Broadcasting Commission of Washington. Different amounts that would be required to finance this proposition were talked of, two, three or probably four thousand dollars would be necessary, and after talking it over the directors adjourned that meeting for the purpose of ascertaining just about what would be required to finance this contention that they had before the Broadcasting Commission. At least the directors meeting adjourned without fixing any amount or going any further than discussion. There was some treasury stock discussion in which each of the parties had the right to an equal number of shares, and there was no contention between these parties but that each would have the right to take one-half of the number that should be sold. The meeting adjourned, possibly for the reason that the notice given of the meeting was not sufficient to authorize any further action. There was then notice given to the directors that there would be a meeting on the 24th of October for the purpose of issuing and selling the required amount of treasury stock to finance this contention or the claims the company had before the Broadcasting Commission. Mr. Townes testified that he received that notice and the purpose of the meeting, on the 24th, but that he did not attend the meeting. Neither was Mr. Bender there. At that time the board of directors passed a resolution to sell twenty shares of the treasury stock for the purpose of financing whatever enterprise or contention there was before the Broadcasting Commission at Washington, and each side, the Ohio Broadcasting Corporation and the Williamsons, had a right to subscribe for half of this amount. There was also at this meeting a resolution passed providing that the purchase price of the stock should be placed in the hands of Jones, under his control and not in the

corporation treasurer. We should state that Mr. Townes was the treasurer of the corporation. This money was left with Mr. Jones in order that the cost to finance the claim before the commission would not be mingled with the other funds of the corporation. On the same day, the 24th, which was Saturday, Mr. Williamson, Sr., paid by check to Jones for ten shares at $100.00 a share, or $1,000.00, and there was issued to him on that day a certificate for ten shares, making the Williamsons the owners of 97½ shares. On Monday the Ohio Broadcasting Corporation, through Mr. Townes, forwarded its proposition under trust agreement to purchase the 87½ shares at $200.00 a share from the Williamsons, and forwarded with that this check or draft for ten per cent of the purchase price. Within the ten days the Williamsons, in answer to that offer, called attention to the fact that they were the owners of ten shares more, 97½ shares, and offered to accept the $200 a share for their 97½ shares and retained the draft for $1750.00. The Ohio Broadcasting Corporation was not willing to pay for the extra ten shares, and in a few days after they wrote a letter withdrawing their offer to purchase the stock owned by Williamsons, and as the amount of the check was not returned the action below was brought to recover that ten per cent. The question to be determined is whether by this offer to purchase the 87½ shares, that under this provision to sell or purchase contained in the trust agreement, the Ohio Broadcasting Company was bound to accept and pay for the 97½ shares. The Ohio Broadcasting Corporation, through its representative, Townes, had knowledge that the meeting on the 24th was for the purpose of issuing whatever amount of treasury stock might be deemed necessary in order to carry on whatever contention there was before the Broadcasting Commission. He had knowledge that that was the purpose of calling the meeting. It does not appear that the Broadcasting Company or Townes had any actual knowledge at the time of the offer to purchase the 87½ shares, that 20 shares were authorized to be sold of the treasury stock, and each side was authorized to purchase the half thereof. He had no knowledge that the Williamsons had actually purchased and paid for the stock, for the reason that while he was treasurer, yet this resolution, placed in the hands of Jones the money received from the sale of such stock for the purpose we have stated. Townes did not have any knowledge at the time that this offer was made that the Broadcasting Company, through its board of directors, passed a resolution to leave this money with Mr. Jones. At the time that the Ohio Broadcasting Corporation, through Townes, made its written offer to purchase the stock of Williamsons, it had no actual knowledge that there had been a resolution passed to sell stock, yet it knew that was the purpose of the meeting, but it did not know and was not bound to know that such resolution was passed. Neither did the Ohio Broadcasting Corporation know that Williamsons had actually purchased these ten shares, so that their offer was only to purchase and pay for 87½ shares. The agreement for the purchase and sale of stock required the party making the offer to sell all of his own or to purchase all of the other's stock, but we do not think that the Ohio Broadcasting Corporation should be held by its offer to have purchased more than 87½ shares when it did not know at the time that Williamsons had purchased and paid for ten shares more, or that the arrangement between these parties to sell would require them to purchase more shares than the Ohio Broadcasting Corporation knew was issued to the Williamsons, but in addition to that, suppose the Ohio Broadcasting Corporation is held to have knowledge of what was done at that meeting; if so, it did not make its proposition to purchase under this contract in the trust agreement between these parties. If it knew, it did not offer to pay the full amount and it was just making an offer to purchase but not under the agreement. We have not forgotten that Townes testified that he was making the offer under the provisions of the trust agreement, yet that did not make an offer in accordance with the trust agreement.

We think that the Ohio Broadcasting Corporation was not required under the offer it made to pay for the extra ten shares, or 97½ shares, that the defendants below then owned, and that it had a right to withdraw its offer. It had a right to recover back the ten per cent of the purchase price. The judgment of the court below is affirmed.

Judgment affirmed.

FARR and ROBERTS, JJ, concur in the judgment.